**Womble Bond Dickinson (US) LLP**
201 East Washington Street, Suite 1200
Phoenix, AZ  85004

**Todd Feltus** (State Bar No. 019076)
Direct Dial: 602.262.5397
Direct Fax: 602.262.5747
Email: Todd.Feltus@wbd-us.com

**Yalda Godusi Arellano** (State Bar No. 034742)
Direct Dial: 602.262.5311
Email: Yalda.Arellano@wbd-us.com

**Katerina Grainger** (State Bar No. 038677)
Direct Dial: 602.262.5387
Email: Katerina.Grainger@wbd-us.com

*Attorneys for Plaintiff, CAE Aviation Academy Phoenix LLC and
Thrust Flight, LLC*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| CAE Aviation Academy Phoenix LLC, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>City of Mesa,<br><br>    Defendant. | Case No. 2:26-cv-03325-KML<br><br><br>**REPLY TO MOTION FOR PRELIMINARY INJUNCTION** |

201 East Washington Street, Suite 1200
Phoenix, AZ 85004

WOMBLE BOND DICKINSON



There is no dispute that the landing "fees and charges for services provided by Falcon Field Airport" as contemplated in Resolution 12480 (the "Resolution") will create dire consequences to national and international airlines who rely on Plaintiffs CAE and Thrust for their well-trained student pilots, which will necessarily impact aviation safety and the public-at-large. When practice landings are reduced because of cost-considerations and the number of student-pilots drops because of uncertainty, that creates a serious supply issue for an existing and insatiable demand of well-trained pilots. But that's precisely what the Resolution was designed to do—to specifically halt the flight schools' operations because of neighborhood complaints (an issue the City created when it sold property adjacent to Falcon Field Airport ("FFZ") to developers). Rather than legal procedures to reduce noise, the City has implemented new unconstitutional fees in an effort to drive out flight schools.

The City asks the Court to ignore these considerations and to rubber-stamp its missteps and contradictory positions. But when presented with a government "action that is incongruent with what the record reveals about the [government's] priorities and decisionmaking process" the Court should not "ignore the disconnect between the decision made and the explanation given." *Dep't of Com. v. New York*, 588 U.S. 752, 785 (2019). Afterall, "[i]f judicial review is to be more than an empty ritual, it must demand something better than the explanation offered for the action taken in this case." *Id.*

Plaintiffs are not seeking relief to merely benefit themselves, they are seeking relief so that they can adequately and safely prepare the next generation of pilots to ensure our skies are safe and prepared in an unpredictable time. For these reasons, the Court is well within its authority to maintain the status quo until it has resolved this action on the merits.

## I.    PLAINTIFFS ARE LIKELY TO PREVAIL ON THEIR CLAIMS

### A.    The Resolution's Design Is Indefensible as Cost Recovery

The City's critical omission is its complete failure to offer any evidence that the landing fees bear a rational relationship to airport costs. The Resolution contains no findings, no cost-allocation study, and no marginal-cost analysis establishing that $20.35 per landing reflects the actual incremental cost imposed by each landing on airfield

infrastructure. More revealing still, the Resolution authorizes fee increases if operations decline below projected levels. A fee that rises as use falls is the antithesis of a compensatory user charge—it is a revenue target masquerading as cost recovery.

The Supreme Court's principal decision on airport fee reasonableness requires that landing fees be a "fair approximation of the use of the facilities" and "not excessive in relation to the benefits conferred." *Nw. Airlines, Inc. v. Cnty. of Kent*, 510 U.S. 355, 369 (1994). By Plaintiffs' uncontested calculations, the fees will impose over $3.5 million annually on CAE and Thrust *alone*—vastly exceeding the City's stated expectations of the Airfield Cost Center. But the City does not dispute these figures in the Response; does not offer alternative calculations; and tells the Court that it cannot examine the fees at all. That position is untenable under the authorities it cites.

**B.    The Federal Government Regulates Noise & Congestion, Not Cities**

The City misconstrues CAE and Thrust's preemption theory. ANCA exclusively governs noise and congestion restrictions at airports. Plaintiffs do not seek relief under ANCA directly. Rather, they invoke this Court's traditional equitable authority, under the Supremacy Clause, to enjoin state and local action where federal law applies. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983).

The Supreme Court recognized that "the ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England." *Armstrong v. Exceptional Child Ctr., Inc.,* 575 U.S. 320, 327 (2015). This equitable authority exists except where Congress has affirmatively displaced it. That is, where the statutory scheme provides a "sole remedy" and the standard is "judicially unadministrable." *Id.* at 328. Neither condition is met here. The Second Circuit's thorough analysis in *Friends of the East Hampton Airport, Inc. v. Town of East Hampton*, 841 F.3d 133 (2d Cir. 2016), directly addresses ANCA and concludes that Congress did not foreclose equitable enforcement. *Id.* at 145–47. The City labels *East Hampton* as "eccentric," but the decision's reasoning is sound: ANCA's enforcement provisions (grant-funding conditions and DOT injunctive

- 2 -

authority) do not constitute the type of "sole remedy" that forecloses equitable jurisdiction under *Armstrong*. *See Valenzuela v. Ducey*, 329 F. Supp. 3d 982, 998 n.5 (D. Ariz. 2018) (analyzing *Armstrong* and explaining that the Court "is bound by Ninth Circuit law" which states "that plaintiffs can obtain injunctive relief on the basis of the Supremacy Clause."). Unlike the Medicaid Act in *Armstrong*, where Congress vested enforcement authority exclusively in a single Secretary with a single remedy (withholding funds), ANCA provides multiple enforcement mechanisms across multiple agencies—a structure the Second Circuit correctly found insufficient to displace equity. *E. Hampton*, 841 F.3d at 145. The Eleventh Circuit has since applied this framework, confirming that where an airport restriction does not comply with ANCA and is not grandfathered, it is "by [its] nature, unreasonable and arbitrary." *Palm Beach Cnty. v. FAA*, 53 F.4th 1318, 1327 (11th Cir. 2022) (citing *id.*).

Courts are permitted to enjoin local measures based on preemption. *See Arizona v. United States*, 703 F. Supp. 2d 980, 987–88 (D. Ariz. 2010), *aff'd in part, rev'd in part*, 567 U.S. 387 (2012). A municipality is vested "only with the power to promulgate reasonable, nonarbitrary and non-discriminatory regulations" that must be consistent with federal policy. *E. Hampton*, 841 F.3d at 139; *accord City & Cnty. of San Francisco v. FAA*, 942 F.2d 1391, 1394 (9th Cir. 1991). A fee regime lacking any cost basis that functions as a *de facto* noise restriction exceeds this narrow authority. *See Nat'l Bus. Aviation Ass'n v. City of Naples Airport Auth.*, 162 F. Supp. 2d 1343, 1352–54 (M.D. Fla. 2001) (upholding airport restriction only where the proprietor complied with ANCA's procedural requirements).

Here, the purpose and effect of the Resolution are to suppress flight-training operations in response to noise complaints—precisely the type of local action that federal law reserves to federal mechanisms. The Supremacy Clause independently preempts any local measure that intrudes into the field of airspace management and aircraft operational control that Congress has reserved for exclusive federal regulation. *City of Burbank v. Lockheed Air Terminal, Inc*, 411 U.S. 624, at 633–34 (1973). Airports may not employ fees as an indirect means of restricting lawful aeronautical activity. FAA Order 5190.6C § 13.18.

The City's authorities reinforce, rather than undermine, the conclusion that local

- 3 -

201 East Washington Street, Suite 1200
Phoenix, AZ 85004



WOMBLE BOND DICKINSON

laws are preempted by ANCA. The City relies on three district-court cases that only addressed whether ANCA creates a statutory cause of action: *Delux Public Charter, LLC v. County of Orange*, 2022 WL 18228386 (C.D. Cal. Oct. 31, 2022), *Horta, LLC v. City of San Jose*, 2008 WL 4067441 (N.D. Cal. Aug. 28, 2008), and *Tutor v. City of Hailey*, 2004 WL 344437 (D. Idaho Jan. 20, 2004). These cases do not address that equitable preemption claims survive even without a statutory claim.

The City dodges preemption in its legal analysis. For example, *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996), did not address preemption. Instead, it addressed Eleventh Amendment tribal sovereign immunity limiting congressional abrogation powers. As a municipality, the City does not enjoy sovereign immunity and is subject to equitable preemption suits. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). The City cites *Alexander v. Sandoval*, 532 U.S. 275 (2001), which did not involve preemption. Instead, it concluded that private plaintiffs cannot sue to enforce federal regulations absent Congressional authority. *Id.* at 292-93. The City also points to two Supreme Court cases that limit 42 U.S.C. § 1983's reliance as a vehicle for enforcing federal spending statutes that lack "rights-creating language." *Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357 (2025); *Gonzaga University v. Doe*, 536 U.S. 273 (2002). But Plaintiffs are not seeking an implied cause of action or a Section 1983 claim. Plaintiffs' preemption claims arise directly under the Supremacy Clause—a constitutional basis for equitable relief that the Supreme Court has long recognized. *See Ex parte Young*, 209 U.S. 123 (1908).

The City's "judicially unadministrable" argument fares no better. The City contends that this Court cannot determine whether the Resolution functions as a "noise or access restriction" because that judgment belongs to the Secretary of Transportation. (Doc. 15 at 6.) But the inquiry here is far more concrete than the Medicaid "satisfaction" standard at issue in *Armstrong*. The question is whether the City bypassed the exclusive federal mechanisms for noise and access restrictions (Part 161 procedures) and instead adopted an economically coercive measure to achieve the same result. *See* 14 C.F.R. pt. 161. The City's own public statements answer that question. It told residents it "cannot regulate noise under

201 East Washington Street, Suite 1200
Phoenix, AZ 85004

WOMBLE BOND DICKINSON

201 East Washington Street, Suite 1200
Phoenix, AZ 85004

WOMBLE BOND DICKINSON

federal law," then adopted a fee regime targeted at flight schools and designed to reduce training operations by an assumed ten percent. (Doc. 1, ¶¶ 1–2; Doc. 2-8, at 3 n.1.)

The City's contention that ANCA does not apply because Plaintiffs operate propeller-driven "nonstage" aircraft, rather than Stage 2 or Stage 3 turbojets, twists the preemption inquiry. The City concedes that noise restrictions on Stage 3 aircraft are subject to ANCA. The Resolution applies to *all* fixed-wing aircraft, including turbofan aircraft that are classified as Stage 3 (or Stage 4) under 14 C.F.R. § 36.1(f)(5)–(6), (9)–(10). Stage 3 aircraft that land at FFZ are subject to the landing fees. Because the Resolution affects all aircraft, ANCA's procedural requirements are triggered, making it preempted by ANCA.[1]

### C. The Landing Fees Conflict with the Anti-Head Tax Act

The City argues that two circuits have found no implied private right of action under the AHTA. [Doc. 15 at 8–10, citing *Sw. Air Ambulance, Inc. v. City of Las Cruces*, 268 F.3d 1162 (10th Cir. 2001); *Miller Aviation v. Milwaukee Cnty. Bd. of Supervisors*, 273 F.3d 722 (7th Cir. 2001).] But those cases addressed implied *damages* remedies—not the availability of prospective equitable relief. *Southwest Air* held only that no implied damages remedy exists under the AHTA, 268 F.3d at 1171–72; it did not address—much less foreclose— *prospective equitable relief* to prevent ongoing enforcement of unlawful fees. And despite *Miller Aviation*'s holding on statutory remedies, the Supreme Court adjudicated AHTA reasonableness in *Kent County* on the merits without resolving whether a private right of action exists. 510 U.S. at 365. Judicial review of fee reasonableness is available even absent an express statutory remedy.

The City's assertion that the AHTA applies only to "commercial service airlines" misconstrues the statute. Section 40116(e)(2) permits "reasonable rental charges, landing fees, and other service charges from aircraft operators for the use of airport facilities." 49 U.S.C. § 40116(e)(2). The statute says "aircraft operators"—not "airlines." *Kent County*

---

[1] Perhaps the City is conceding that the Resolution was intended to target flight schools, which violates federal law on discriminating against aeronautical users engaged in similar activities on unjustly discriminatory terms, contrary to 49 U.S.C. § 47107(a)(1) and FAA Order 5190.6C § 13.18.

evaluated fees at an airport serving general aviation users under this same provision. 510 U.S. at 359–60. The FAA's Rates and Charges Policy applies to commercial service and general aviation airports. 78 Fed. Reg. 55330. The City relies on *Air Transport Ass'n of America v. City of Los Angeles*, 844 F. Supp. 550 (C.D. Cal. 1994), to argue that Congress "affirmatively acted" through the AHTA to foreclose private challenges. But *Air Transport* involved commercial airlines at a commercial-service airport. *Id.* at 552. The City simultaneously contends that the AHTA does not even apply to general aviation operators –meaning that no congressional "balance" was struck for Plaintiffs' operations, and the City's reliance on *Air Transport* loses force.

The City's reading creates a regulatory vacuum in which general aviation landing fees face no federal constraint, a result inconsistent with the FAA's enforcement practice and the statute's text. The Arizona Court of Appeals recently concluded that a contract term which includes a commercial activity fee of 2.5% of gross receipts could not be enforced because "it is directly prohibited by U.S.C. § 40116 [AHTA]." *See, e.g,. Sedona-Oak Creek Airport Auth. Inc. v. Dakota Territory Tours ACC*, 2021 WL 2232082, at *5, ¶ 23 (Ariz. Ct. App. June 3, 2021). The AHTA applies and bars the Resolution's landing-fee scheme.

### D. The Dormant Commerce Clause Claim Is Not Foreclosed

Where a municipality imposes economically coercive fees that suppress interstate commerce, the Dormant Commerce Clause applies. *See Dennis v. Higgins*, 498 U.S. 439, 450–51 (1991). In *Kent County*, the Dormant Commerce Clause did not apply because Congress had *authorized* airport fee-setting. 510 U.S. at 373-74. It did not conclude that airport fees are categorically immune from constitutional scrutiny. *See Sw. Air,* 268 F.3d at 1177. Here, Congress did not authorize the City to impose unreasonable or regulatory fees.

The City's remaining authorities do not alter this conclusion. *Peridot Tree WA, Inc. v. Washington State Liquor & Cannabis Control Board* rejected a Commerce Clause claim because Congress had *criminalized* the underlying cannabis market. 162 F.4th 1179 (9th Cir. 2026). Aviation training, by contrast, is a lawful activity affirmatively encouraged by federal policy, FAA grant assurances, and the national airspace system, which Congress

- 6 -

201 East Washington Street, Suite 1200
Phoenix, AZ 85004

WOMBLE BOND DICKINSON

201 East Washington Street, Suite 1200
Phoenix, AZ 85004

WOMBLE BOND DICKINSON

affirmatively created and funded, and requires airports like FFZ to be "available for public use on reasonable conditions." 49 U.S.C. § 47107(a)(1). *Peridot Tree*'s foreclosure rationale is therefore misplaced. *Merrion v. Jicarilla Apache Tribe* addressed tribal sovereign taxing power over mineral extraction on reservation land—a unique context involving tribal sovereignty that has no application to a municipality's adoption of fees at a federally funded airport. 455 U.S. 130 (1982).

Finally, the City relies on cases that did not compel relocation or restructuring interstate operations. In *Flynt v. Bonta*, the Ninth Circuit rejected a Dormant Commerce Clause claim where the challenged law merely increased compliance costs without compelling relocation or restructuring interstate operations. 131 F.4th 918 (9th Cir. 2025). Likewise, *Rosenblatt v. City of Santa Monica*, involved local rent control in a housing market with no demonstrated interstate dimension. 940 F.3d 439, 452 (9th Cir. 2019); *see also Invenergy Thermal LLC v. Watson*, No. 23-3857, 2024 WL 5205745 (9th Cir. Dec. 24, 2024) (addressing a regulation affecting how a single facility operates locally); *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356 (2023) (animal-welfare regulation that did not target any particular interstate industry or compel relocation). Here, the City's own revenue model projects that flight schools will relocate across state lines—the precise restructuring of interstate commerce that *Pike* and *Kassel* identify as constitutionally significant. *See also Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 353–54 (1977) (invalidating a facially neutral law that disproportionately burdened out-of-state producers by stripping competitive advantages and doing "remarkably little" to advance the State's objective). Unlike *Flynt*'s small band of licensees, here the fee affects all flight-training operators at FFZ and predictably restructures an interstate market. The Resolution predictably forces relocation and exit from the market, crossing the line into an impermissible structural burden on interstate commerce.

**E.     Arizona Law Allows a Private Right of Action for Violations of City Code**

In its Response, the City fails to address its failure to pass an ordinance for the landing fees created by the Resolution. Under Arizona law, a resolution is void where it

- 7 -

201 East Washington Street, Suite 1200
Phoenix, AZ 85004

WOMBLE BOND DICKINSON

exceeds the authority granted in the city charter. *Home Builders Ass'n of Cent. Arizona, Inc. v. Riddel*, 109 Ariz. 404, 405-06, 510 P.2d 376 (1973). By the City's own charter, the City Council is required to enact an ordinance to "[a]mend or repeal or amend any ordinance previously adopted" and to "amend a City Code." City Charter, § 210(A), (D). A resolution is "not a legislative act with the force of law" where the governing code required an ordinance. *Alpha, LLC v. Dartt*, 232 Ariz. 303, 306, 304 P.3d 1126, 1129 (App. 2013). The City admits the landing fee is "new" and not merely a modification of the previous schedule of permitted rates. (Doc. 15 at 13.) The City Code grants authority for the imposition of rates and charges, not "fees." That requires an ordinance. City Code § 9-9-14. Thus, the Resolution conflicts with the City Charter because an ordinance was required to amend the City Council's authority under the City Code. *See* City Charter, § 210(A), (D). The Resolution is therefore void and without legal force.

Faced with an invalid resolution, the City contends CAE and Thrust cannot succeed on Count Four because Chapter 9-9 of Mesa City Code provides no private right of action. (Doc. 15 at 13.) Yet Arizona courts have recognized an implied private right of action where the intended beneficiary of the challenged law brings suit for its violation. *See Chavez v. Brewer*, 222 Ariz. 309, 318, ¶ 28, 214 P.3d 397, 406 (App. 2009). And in similar circumstances, Arizona courts have allowed plaintiffs who are subjected to an unlawful fee to challenge it in court. *See, e.g., Riddel*, 510 P.2d 376. As the City points out, there is no right of action when the plaintiff is an incidental beneficiary. *McNamara v. Citizens Protect. Tax Payers*, 236 Ariz. 192, 193, 337 P.3d 557, 558 (App. 2014) (statute intended to benefit voters and public at large); *Fortitude Surgery Center, LLC v. Aetna Health Inc.*, No. CV-24-02650-PHX-KML, 2025 WL 1432906, at *4–6 (D. Ariz. May 19, 2025) (legislature only intended statute to be enforced by state agency).

Here, CAE and Thrust will be harmed by the Resolution, and are intended beneficiaries of City Code § 9-9-13. The City Code provides that it will only impose fair and reasonable rates and charges at FFZ. The policy underlying that Code section identifies airport patrons and users, and owners of general aviation aircraft as beneficiaries. City Code

§ 9-9-13. Arizona law allows CAE and Thrust to challenge the Resolution because it exceeded the City Council's authority under the City Code.

### F.    Section 25 of the Arizona Constitution Claim Bars the Resolution.

The City's lone argument that CAE and Thrust cannot state a claim that the Resolution is unconstitutional under Section 25 is *State ex rel. Brnovich v. City of Phoenix*'s *dicta* analogizing ground transport fees to "landing fees." 249 Ariz. 239, 246, ¶ 29, 468 P.3d 1200, 1207 (2020). (Doc. 15. at 14.) But its blind reliance on *dicta* ignores the plain language and effect of the Resolution—the fees and charges are "for services provided at Falcon Field Airport" not merely "landing" on property. (Doc. 2-8.) The landing fees described in *Brnovich* are not service based as they are in the Resolution. Instead, the *Brnovich* court described a "landing fee . . . triggered by the use of Airport property and not the transition between carriers and their passengers that gave rise to the trip." *Id.* Because it was triggered by the use of property and not the service, it was not a transaction-based fee barred by Section 25. *Id.* at 247, ¶¶ 30–31. Unlike in *Brnovich*, the Resolution explicitly states the "fees and charges" are "for services provided by Falcon Field Airport." (Doc. 2-8.)

Further, the "landing fees" the City of Phoenix imposed were not subject to Section 25 because of their pre-2018 implementation date. Ariz. Const. art. IX, § 25; *see also* Phx. City Code, ch. 4, art. 9, § 4-179 (last amended by Ord. No. G-6394 on December 13, 2017). Contrary to the City's contentions, the court could not have "blessed airport 'landing fees'" under Section 25 because the landing fees at issue were adopted before Section 25's effective date. Because the Resolution explicitly imposes a fee on **services** provided at FFZ, the fees are unconstitutional. *Brnovich's* trip fees were triggered solely by a driver's physical entry into a geofenced property zone, whereas the Resolution's fees are triggered by FFZ's active provision of operational services—air traffic control coordination, runway clearance, and aircraft rescue and fire-fighting coverage—to each landing event. The Resolution's own language places it squarely within Section 25's prohibition on fees "on

201 East Washington Street, Suite 1200
Phoenix, AZ 85004

WOMBLE BOND DICKINSON

the privilege to engage in . . . any service," not the property-access category *Brnovich* approved. See **Ex. A**, Phx. Ord. G-6650.

### G.     The City Violated Arizona's Open Meeting Law

The City asserts CAE and Thrust cannot show a violation of Arizona's Open Meeting Law because the City Council "provided notice about potential modification of fees and charges at FFZ, and then voted on that exact topic." (Doc. 15 at 15.) This mischaracterizes both the City's notice and Arizona's Open Meeting Law. To comply with the Open Meeting Law, the agenda item must actually relate to the proposed action, must not be vague, and must be available at least twenty-four hours before the public meeting. *Thurston v. City of Phoenix*, 157 Ariz. 343, 345–47 (1988); *Ahnert v. Sunnyside Unified Sch. Dist. No. 12*, 126 Ariz. 473, 475–76 (1980). The agenda "shall list the specific matters to be discussed, considered, or decided that the meeting." A.R.S. § 38-431.02(H). The City's agenda did not meet that standard. The agenda only stated that the City was "[m]odifying fees and charges for Falcon Field Airport." The proposed action was a novel $2.9 million fee regime. The City concedes that the Resolution "announced a new 'Schedule of Fees & Charges,' including landing fees." [Resp. at 13; *see also* Mot., Ex. 8.]   And the City's materials designated the fees as "Landing Fee (NEW)". Merely telling the public it was to "modify" fees and charges did not provide sufficient notice under A.R.S. § 38-431.02 that it would impose new fees. Not complying with A.R.S. § 38-431.02 renders the Resolution "null and void." A.R.S. § 38-431.05.

The City ignores its obligations under A.R.S. § 38-431.02 and cites a 1979 case that analyzed A.R.S. § 38-431.01. *Karol v. Bd. of Educ. Trs., Florence Unified Sch. Dist. No. 1 of Pinal Cnty.*, 122 Ariz. 95, 96–98 593 P.2d 649, 650–52 (1979). Based on that case, the City contends it was only "required to disclose 'that amount of information sufficient to appraise the public in attendance of the basic subject matter of the action so that the public may scrutinize the action taken during the meeting.'" (Doc. 15 at 14 (quoting *id.* at 98).) There, the plaintiffs did not challenge the public notice of the meeting but challenged actions taken at the meeting as violative of the Open Meeting Law. *Id.* at 96. In contrast,

- 10 -

CAE and Thrust contend the City failed to provide notice before the meeting that would have put them on notice of the action to be taken, which is required under A.R.S. § 38-431.02.

## II.    IRREPARABLE HARM, BALANCE OF HARDSHIPS, & PUBLIC POLICY

Plaintiffs have established concrete, imminent harm. Plaintiffs' reputations are on the line. One CAE student has already departed and more may follow. At least one other flight school is planning relocation. The Ninth Circuit holds that "[t]he threat of being driven out of business is sufficient to establish irreparable harm." *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1474 (9th Cir. 1985). Forced alteration of operations constitutes irreparable harm. *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1058–59 (9th Cir. 2009); *see also BNSF Ry. Co. v. Cal. Dep't of Tax & Fee Admin.*, 904 F.3d 755, 771 (9th Cir. 2018).

The equities are asymmetrical. Plaintiffs face permanent displacement—dissolution of training pipelines, loss of students, and irreversible reputational harm. The City faces only a temporary delay in collecting a newly enacted fee that it has already voluntarily delayed to August 1. (Doc. 15-1 ¶ 7.) The City remains free to operate FFZ, maintain infrastructure, and collect all pre-existing fees. The public interest also favors an injunction. Preventing enforcement of likely unlawful government action is a recognized public interest. *Meinecke v. City of Seattle*, 99 F.4th 514, 526 (9th Cir. 2024). Plaintiffs train pilots for major airlines during a national pilot shortage—disrupting that pipeline harms the public. And the FAA's active investigation confirms that the federal government itself views these fees as raising serious compliance concerns.

## III.    CONCLUSION

The City cannot defend the Resolution on the merits, so it argues this Court may not examine the Resolution at all. Plaintiffs have shown that they are likely to succeed on the merits and will suffer irreparable harm absent an injunction preserving the status quo that has been in place for 80 years. Plaintiffs respectfully request that the Court enter a preliminary injunction enjoining enforcement of Resolution No. 12480.

DATED this 3rd day of June 2026.

WOMBLE BOND DICKINSON (US) LLP


By: */s/ Todd Feltus*
    Todd Feltus
    Yalda Godusi Arellano
    Katerina Grainger
    *Attorneys for Plaintiff, CAE Aviation*
    *Academy Phoenix LLC and Thrust Flight,*
    *LLC*

201 East Washington Street, Suite 1200
Phoenix, AZ 85004

WOMBLE BOND DICKINSON