**WO**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| CAE Aviation Academy Phoenix LLC, et al., | No. CV-26-03325-PHX-KML |
| Plaintiffs, | **ORDER** |
| v. | |
| City of Mesa, et al., | |
| Defendant. | |

Plaintiffs CAE Aviation Academy Phoenix LLC and Thrust Flight Properties LLC seek preliminary relief against the City of Mesa ("Mesa") regarding a newly-imposed aircraft landing fee at Falcon Field Airport. They bring several state and federal claims and argue the fee will irreparably harm their businesses. The motion for preliminary injunction is denied because plaintiffs have not shown a likelihood of irreparable harm.

### I.    Background

Falcon Field is a city-owned general aviation airport in Mesa, Arizona. (Doc. 18 at 2.)[1] It has long been used for flight training and acts as a reliever airport, attracting aviation traffic away from congested commercial airports. (Doc. 18 at 4–5.)

CAE is part of the largest flight training network in the world. (Doc. 18 at 6.) At Falcon Field and other locations across the United States and internationally, CAE provides flight training for many major airlines. (Doc. 18 at 6–7.) It bases 68 aircraft at Falcon Field and holds leases there through 2033. (Doc. 18 at 7.) Thrust also provides flight training at

---

[1] Plaintiffs amended their complaint after filing the motion for preliminary injunction. The relevant factual allegations are the same between the two filings, so this order cites the more recent one.

Falcon Field and currently bases five aircraft there, with plans to add five more soon. (Doc. 18 at 7–8.)

In March 2026, Mesa adopted a new landing fee for certain aircraft using Falcon Field, ostensibly based on a revenue shortfall. (Doc. 18 at 11, 16–18.) Beginning in August 2026, Mesa will impose a fee of $20.35 per landing for based fixed-wing aircraft under 6,000 pounds, although each aircraft subject to the fee will be allowed ten free landings per month. (Docs. 15 at 7; 18 at 17.) Plaintiffs argue there is no legal basis for imposing the fee and claim Mesa's underlying intent is to resolve neighborhood noise complaints rather than remedying any purported budgetary shortfalls. (Docs. 2 at 2; 18 at 11.)

Plaintiffs allege the new fee will have an outsized impact on them and cause substantial harm to their businesses. CAE trains an average of 115 students daily, totaling about 640 students per year. (Doc. 18 at 14.) Thrust trains on average 12 students each day, totaling around 30 students per year. (Doc. 18 at 14.) Each CAE student conducts an average of 3.5 landings per day and requires approximately 275 landings throughout their entire course. (Docs. 2 at 13; 18 at 14.) Each Thrust student requires approximately 422 landings. (Doc. 2 at 13.) Annually, CAE projects more than 150,000 landings at Falcon Field, and Thrust projects approximately 28,000 landings. (Doc. 18 at 14.) Based on current usage, CAE estimates Mesa's new fees will cost it approximately $3.2 million per year and Thrust estimates the fees will cost it more than $500,000 per year. (Doc. 18 at 14–15.)

Plaintiffs claim the new fees will make their flight-training operations at Falcon Field unsustainable. (Doc. 18 at 20.) CAE cites one student pilot who allegedly left because of the financial impact and "uncertainty that CAE faces" due to the fees. (Doc. 18 at 20.) Additionally, they identify an unrelated nonparty flight school that plans to leave Falcon Field. (Doc. 18 at 20.) In general terms, plaintiffs allege harm to their reputation and goodwill and claim they will be forced to "either relocate, cease operations, or absorb costs." (Doc. 18 at 31.) They also forecast that training pipelines will be dissolved and a permanent loss of student enrollments will occur. (Doc. 18 at 31.)

On May 11, 2026, plaintiffs filed their complaint in this court. (Doc. 1.) The next

day, they filed an administrative complaint with the Federal Aviation Administration. (Doc. 15 at 8.) An FAA investigation is now underway. (Doc. 15 at 8.) Plaintiffs seek a preliminary injunction preventing Mesa from implementing or enforcing the new landing fees while this case proceeds. (Doc. 2.)

## II. Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Generally, a court analyzes a request for a preliminary injunction under two slightly-different tests. First, it must evaluate if there is a likelihood of success on the merits, if there is a likelihood of irreparable harm, whether the balance of equities tips in the movant's favor, and whether an injunction would be in the public interest. *Id.* at 20. A court typically must also assess whether "serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor" in addition to showing "a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011).

## III. Analysis

A likelihood of irreparable harm is a key component under either preliminary-injunction test. *All. for the Wild Rockies*, 632 F.3d at 1135. Failure to establish likely irreparable harm is reason enough alone to deny preliminary relief. *See Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 981–82 (9th Cir. 2011); *see also Ahlman v. Barnes*, No. 20-55568, 2020 WL 3547960, at *3 (9th Cir. June 17, 2020) ("The absence of irreparable harm is alone sufficient reason to deny" a motion for injunctive relief) (citing *Doe #1 v. Trump*, 957 F.3d 1050, 1061 (9th Cir. 2020))).[2]

---

[2] A Ninth Circuit panel has elsewhere suggested that for alleged constitutional violations, district courts may not "skip over" evaluating the likelihood of success on an alleged constitutional claim because that determination may affect the analysis of the remaining factors. *See Baird v. Bonta*, 81 F. 4th 1036, 1044-46 (9th Cir. 2023). *Baird*'s logic does not seem to apply to claims like those here, where plaintiffs do not allege a constitutional injury beyond one that could later be compensated by damages. *Id.* at 1043-44 (requiring likelihood-of-success analysis on individuals' Second Amendment claim where district court had analyzed neither likely success nor irreparable injury). But to make the bases for its analysis explicit and despite significant doubt, the court assumes for purposes of this motion only that plaintiffs have fully satisfied the first *Winter* factor and are likely to

Economic harm "is not generally considered irreparable." *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 677 (9th Cir. 2021). But "[t]he threat of being driven out of business is sufficient to establish irreparable harm." *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1188 (9th Cir. 2022). Additionally, when a plaintiff provides "specific evidence that its reputation and goodwill [are] likely to be irreparably harmed," this more-intangible injury may qualify as irreparable. *adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 761 (9th Cir. 2018); *see also Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991). A plaintiff must show irreparable harm is *likely*, not merely possible. *Winter*, 555 U.S. at 22.

Plaintiffs claim in general terms that the Falcon Field landing fees will harm their businesses and create an "unsustainable business model, damage to ongoing recruitment efforts, loss of goodwill, and reputational harm that cannot be remedied through monetary damages or later relief." (Doc. 2 at 16–17.) They further claim the fees will force them to "either relocate, cease operations, or absorb unlawful costs." (Doc. 18 at 31.) To support these claims, plaintiffs cite the departure of just one CAE student "due to economic uncertainties" (Doc. 2 at 17) and state, without evidence, that "more may follow" (Doc. 20 at 12). But the departure of one student—from a combined total of 670 students annually—does not, without more, show plaintiffs are likely to be driven out of business or suffer noncompensable harm before this case can be resolved. Plaintiffs do not explain the circumstances of that student's departure, the financial significance of losing that student, or why similar departures are likely so as to make plaintiffs' injury anything more than speculation. *See Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674–75 (9th Cir. 1988) ("Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction."). Plaintiffs also fleetingly invoke goodwill and reputational harm, but offer no evidence that any student, airline partner, or other relevant actor views the landing fees as reflecting poorly on plaintiffs. And although plaintiffs identify another flight school that reportedly plans to relocate, they do not explain how that

---

succeed on the merits of each constitutional claim asserted in support of their motion.

nonparty's decision establishes likely harm to them. Ultimately, plaintiffs' showing rests on generalized assertions rather than evidence of likely irreparable injury. *See Winter*, 555 U.S. at 22, 24; *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250–51 (9th Cir. 2013) (rejecting an irreparable-harm finding based on "cursory and conclusory" assertions and "platitudes rather than evidence").

It is true that "[t]he threat of being driven out of business" may be sufficient to establish irreparable harm. *See hiQ Labs, Inc.*, 31 F.4th at 1188 (simplified). But plaintiffs do not allege facts showing they will be "driven out of business," *id.*, arguing instead that the lower standard of "[f]orced alteration of [their] operations" constitutes irreparable harm. (Doc. 20 at 12 (citing *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1058–59 (9th Cir. 2009); *BNSF Ry. Co. v. Cal. Dep't of Tax & Fee Admin.*, 904 F.3d 755, 771 (9th Cir. 2018)).) The cases on which plaintiffs rely do not establish that garden-variety operational adjustments prompted by increased costs constitute irreparable injury. *See, e.g.*, *Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466, 471 (9th Cir. 1984) (holding that even the forced removal of a business from its premises did not establish irreparable harm where the resulting losses were calculable and compensable); *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202–03 (9th Cir. 1980) (holding that lost revenues and the inability to enter a lease, begin renovations, or obtain financing were compensable monetary injuries); *see also Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 115 (2d Cir. 2005) ("[O]rdinary compliance costs are typically insufficient to constitute irreparable harm.").

Instead, for "alteration of operations" to establish irreparable injury, the forced changes must be akin to a business-eliminating burden. Plaintiffs' own cases demonstrate this principle. For example, the concession agreements challenged in *American Trucking* would have forced the trucking companies to fundamentally restructure their internal operations from an independent-contractor model to an employee model. *See* 559 F.3d at 1058. The Ninth Circuit emphasized that if the trucking companies refused to restructure, they risked wholesale closure of entire lines of business. *Id.* (noting motor carriers risked

losing their "whole drayage business[,]" "all of that part of the carrier's business will evaporate," and "the result would likely be fatal" to smaller carriers who would then be "out of work"). This "Hobson's choice" between fundamental internal restructuring at a massive cost and business closure drove the analysis in *American Trucking* and is not present here.

*BNSF Railway Co.* likewise does not change the result. The Ninth Circuit devoted one sentence of analysis to irreparable harm in that case, mentioning that if the challenged law went into effect, shipping customers would transport their hazardous materials by truck instead of by rail. 904 F.3d at 771. The district court's irreparable harm analysis was developed only slightly more, and seemed to depend on the railroads' inability to eventually recover damages from the state for the lost business. *BNSF Ry. Co. v. Cal. State Bd. of Equalization*, No. 16-CV-04311-RS, 2016 WL 6393507, at *5–6 (N.D. Cal. Oct. 28, 2016). That concern—presumably based on the Eleventh Amendment, *see Assurance Wireless USA, L.P. v. Reynolds*, 100 F.4th 1024, 1039 (9th Cir. 2024)—is simply not present here. *Centro Familiar Cristiano Buenas Nuevas v. City of Yuma*, 651 F.3d 1163, 1169 (9th Cir. 2011) (Eleventh Amendment does not bar damages against municipalities). Plaintiffs also have not shown any comparable barrier to retrospective relief. At the very least, they have not carried their burden to establish that any economic losses caused by the landing fees would be unrecoverable.

Although plaintiffs do not appear to make this argument (*see* Doc. 2 at 9–12, 16–17), some parties have read dicta in *American Trucking* to suggest that constitutional violations automatically constitute irreparable harm. *See* 559 F.3d at 1059 (quoting *Nelson v. Nat'l Aeronautics & Space Admin.*, 530 F.3d 865, 882 (9th Cir. 2008), *rev'd and remanded*, 562 U.S. 134 (2011)). Some district courts have expressed doubt about this proposition. *See, e.g.*, *Poder in Action v. City of Phoenix*, 481 F. Supp. 3d 962, 979 n.8 (D. Ariz. 2020). But even if *American Trucking* could be read that way and plaintiffs had made the argument here, it would not succeed because the Ninth Circuit has treated likely success and irreparable harm as distinct requirements in cases involving Dormant Commerce

Clause and preemption claims like this one. *See Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 736 (9th Cir. 2017) (finding likely success on a Dormant Commerce Clause claim and remanding for consideration of irreparable harm and the remaining *Winter* factors); *GEO Grp., Inc. v. Newsom*, 50 F.4th 745, 768–69 (9th Cir. 2022) (en banc) (remanding for consideration of the remaining *Winter* factors after finding likely success on a preemption claim). Thus, even assuming plaintiffs are likely to succeed on their constitutional claims as the court has here, they still need to show likely irreparable harm to obtain preliminary relief.

In short, plaintiffs fail to make a showing of likely irreparable harm. Because their alleged harms remain conclusory and speculative, the court need not address the remaining preliminary-injunction factors. The motion is denied.

## IV.  Motion for Expedited Discovery

Plaintiffs also move for expedited discovery, arguing it is necessary to support their preliminary-injunction motion and prepare for an evidentiary hearing. (Doc. 13 at 1, 4–5.) They seek up to fifteen requests for production, nonparty subpoenas, a deposition of Mesa, and depositions of four nonparty individuals. (Doc. 13 at 3–4.) The requested discovery focuses on Mesa's efforts to address noise and congestion, its financial projections and modeling for Falcon Field, and its reasons for adopting the landing-fee resolution. (Docs. 13 at 1, 3; 21 at 2.)

A party seeking expedited discovery must show good cause. *J.P. Morgan Sec. LLC v. Chamberlain*, No. CV-22-01217-PHX-DWL, 2022 WL 4094151, at *2 (D. Ariz. Sept. 7, 2022). Good cause exists when "the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Id.* (simplified); *see also UMG Recordings, Inc. v. Doe*, No. C 08-1193 SBA, 2008 WL 4104214, at *4 (N.D. Cal. Sept. 3, 2008) (collecting cases employing good-cause standard). Relevant considerations may include whether a preliminary-injunction motion is pending, the breadth of the requested discovery, the purpose of the discovery, the burden on the responding party, and how far in advance of ordinary discovery the request is made. *J.P.*

*Morgan*, 2022 WL 4094151, at *2.

Plaintiffs have not shown good cause. Their request for expedited discovery is expressly tied to their preliminary-injunction motion, which the court has now denied. The requested discovery concerning Mesa's motives, financial modeling, and cost calculations is not relevant to the basis for the denial. Accordingly, the motion for expedited discovery is denied. *See Gen. Parts Distrib. LLC v. Perry*, 907 F. Supp. 2d 690, 693 (E.D.N.C. 2012) (denying expedited discovery sought for preliminary-injunction hearing after denying preliminary relief for lack of likely irreparable harm).

**IT IS ORDERED** the Motion for Preliminary Injunction (Doc. 2) is **DENIED**.

**IT IS FURTHER ORDERED** the Motion for Expedited Discovery (Doc. 13) is **DENIED**.

Dated this 23rd day of June, 2026.

**Honorable Krissa M. Lanham**
**United States District Judge**